Hassan A. Zavareei (SBN 181547)
Andrea Gold*
**TYCKO & ZAVAREEI LLP**

1828 L. Street, NW, Suite 1000
Washington, D.C 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com

Annick Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**

1970 Broadway – Suite 1070
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

*Attorneys for Plaintiffs*
*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JILL BROWN and AUSTIN RUSSELL,** individually and on behalf of themselves and all others similarly situated,<br><br>　　　Plaintiffs,<br><br>v.<br><br>**SHARP ELECTRONICS CORPORATION**,<br><br>　　　Defendant. | Case No.: _____<br><br>**Jury Trial Demanded**<br><br>**CLASS ACTION COMPLAINT** |

## <u>CLASS ACTION COMPLAINT</u>

1

Plaintiffs Austin Russell and Jill Brown ("Plaintiffs"), by and through undersigned counsel, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Sharp Electronics Corporation ("Defendant" or "Sharp") and in support allege, upon information and belief and based on the investigation to date of their counsel, as follows:

## NATURE OF ACTION

1.      Sharp is one of the largest technology companies in the world. It designs, manufactures and sells a variety of technological products, including kitchen appliances such as microwaves.

2.      Sharp's kitchen appliance portfolio includes multiple different types of microwaves, including microwave drawers (the "Microwaves" or the "Products"), which are the subject of this action. On its website, Sharp boasts that it "has been innovating microwave cooking for decades and holds 11 patents on the Microwave Drawer platform alone. Engineered for consistency and built with the finest quality materials, great cooks trust the Microwave Drawer to deliver great results every time."[1] Over the course of several decades, Sharp has gained the trust of consumers, who reasonably believe that Sharp products are made with quality materials, and that the Sharp products can be used safely, as intended.

3.      Microwave drawers, as described by Sharp, "offer[] flexible placement options so you can focus on the design elements you prefer by maximizing sight-lines and enabling more design versatility than typical built-in, over-the-range or countertop microwaves."[2]

4.      Sharp's microwave drawers are intended by Sharp to be installed within cabinets, under countertops, or adjacent to wall ovens.[3]

5.      Sharp has offered six models for its microwave drawers, and currently offers five of

---

[1] http://www.sharpusa.com/ForHome/HomeAppliances/Microwaves/MicrowaveDrawer.aspx  (last accessed Sept. 24, 2018).

[2] http://www.sharpusa.com/ForHome/HomeAppliances/Microwaves/MicrowaveDrawerDark.aspx (last accessed Dec. 27, 2018).

[3] http://files.sharpusa.com/Downloads/ForHome/HomeAppliances/MicrowaveOvens/BuildersGuides/2017-Builders%20Guide_3-20-17.pdf (last accessed Dec. 27, 2018).

2

those six: SMD2470AH, SMD2470AS, SMD3070AS, SMD2480CS, KB6524PS, and KB6525PS (collectively, the "Microwaves"). The designs of these Microwaves are substantially similar and each model is the subject of this class action lawsuit.

6.      The cost of the Microwaves is between $1,000.00 and $1,700.00 MSRP.

7.      The Microwaves all contain a defect that makes them unreasonably dangerous, as they are susceptible to catching fire, and unsuitable for their intended use. More specifically, the Microwaves are defectively designed and/or manufactured such that, under normal and intended use, the electromagnetic waves generated by the magnetron tube are unable to properly move through the waveguide into the cooking cavity, resulting in buzzing, smoking, overheating, and eventual destruction of the magnetron, leading to scorching of the waveguide.

8.      Accordingly, the Microwaves are unreasonably dangerous and not fit for household use.

9.      The manifestation of the defect and damage to the Microwaves are not a result of overcooking or prolonged heating by the owner. It can take less than 30 seconds for the magnetron tube to overheat, scorch the back panel of the Microwaves, produce smoke, and fail altogether.

10.     Sharp has undertaken a deliberate and willful pattern of conduct (including taking active measures) aimed at concealing the Microwave defect from its consumers, including the Plaintiffs.

11.     At all relevant times, Sharp knew or should have known about the defect but nevertheless marketed, advertised, and sold the Microwaves without warning consumers that the Microwaves are likely to overheat and could result in buzzing, overheating of the magnetron, scorching of the waveguide, smoking, and ultimate failure.

12.     Indeed, rather than providing consumers with new, non-defective Microwaves after their Microwaves overheated, Sharp either replaced each defective Microwave with another defective Microwave, improperly denied the warranty claim, and/or forced the consumer to sign a waiver or buy an extended warranty as a remedy. Sharp failed to disclose the known defect or provide the customer with a non-defective replacement product.

13.     The replacement Microwaves also fail, or are likely to fail in the same manner, leaving

3

consumers fearful of additional smoke and fire caused by the Microwaves, and with Microwaves that do not function as intended

14.     As a direct and proximate result of Sharp's concealment of the defect, its failure to warn customers about the defect before their purchase of the Microwaves, and its failure to recall the Product or remedy the defect, Plaintiffs and other similarly situated customers ("Class" or "Class Members") purchased and used Sharp's defective Microwaves when they otherwise would not have made such purchases or would not have paid as much for the defective Microwaves.

15.     Plaintiffs' and putative Class Members' Microwaves have failed (or are likely to fail) as a result of the defect when Plaintiffs and Class Members use the Products as intended, resulting in damage to the Microwaves and other property, including smoke damage to cabinetry, kitchen islands and peninsulas, and other interior parts of their homes, and the loss of meals prepared in the Microwaves.

16.     Plaintiffs and all putative Class Members' Microwaves contain the same defect at the point of sale, pose substantially the same safety risk to Plaintiffs, Class Members, consumers, and the public. Sharp's Microwaves cannot be used safely for their intended purpose of preparing meals at home.

## PARTIES

17.     Plaintiff Brown is a resident and citizen of Oakland, Alameda County, California.

18.     Plaintiff Russell is a resident and citizen of Fresno, Fresno County, California.

19.     Defendant Sharp Electronics Corporation is a New Jersey corporation with its principal place of business located in Montvale, New Jersey. Upon information and belief, Sharp's deceptive marketing and advertising campaign originated out of its principal place of business in New Jersey.

20.     Sharp distributes and markets and directs the marketing of the Microwaves in California, and throughout the United States.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named or unnamed) class members, (2) there is

4

an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiffs and Defendant are citizens of different States. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22.     This Court may exercise personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sales of products in this District, and has engaged in the unlawful practices described in this Complaint in this District.

23.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff Brown's claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

24.     Microwave ovens have been ubiquitous in American kitchens for several decades. Consumers have become accustomed to the simplicity and quick cooking that microwave ovens provide, and rely upon manufacturers, including Sharp, to ensure their safe and efficient use.

25.     Sharp is a household name, and one in which consumers have relied upon for the safety and quality of microwave ovens for more than 40 years. Sharp introduced the first microwave oven with a turntable in the 1960s, and in the late 1970s, Sharp introduced low-cost microwave ovens for residential use.[4]

26.     Upon information and belief, Sharp was the first to design, patent, and manufacture microwave drawers. In fact, Sharp owns the trademark for the term "Microwave Drawer."[5]

27.     Sharp is engaged in the business of designing, manufacturing, warranting, marketing, advertising, distributing, and selling the Microwaves. Each of the Microwaves is branded with the

---

[4] http://www.sharpusa.com/AboutSharp/CompanyProfile/SharpAndTechnologyHistory.aspx (last accessed Sept. 24, 2018)

[5] http://www.sharpusa.com/ForHome/HomeAppliances/Microwaves/MicrowaveDrawer.aspx (last accessed Dec. 26, 2018).

CLASS ACTION COMPLAINT

"Sharp" logo or, upon information and belief, can be readily identified as being a Sharp designed, manufactured, and distributed product.

28.     The Microwaves are used, and are intended by Sharp to be used, for safe food preparation.

29.     Microwaves are high voltage appliances that are a considerable electrical hazard if they are defectively designed or manufactured.

30.     Each Microwave contains a magnetron, which is powered by a high voltage transformer, generating the electromagnetic energy waves ("electromagnetic energy" or "waves") in the Microwaves. The magnetron is a vacuum tube device that generates the energy needed to heat food within the microwave. In other words, when a consumer cooks food in a microwave oven, the magnetron takes electricity from the power outlet and converts it into high-powered radio waves that are transmitted down a waveguide.

31.     The waveguide directs the radio waves generated by the magnetron from one end of the waveguide to the other end and into the cooking cavity. The waves enter the cooking cavity and are directed and distributed throughout the cooking cavity by a mode stirrer. The purpose of the mode stirrer is to ensure the waves are distributed throughout the cooking cavity so that the food is evenly cooked. A mode stirrer is utilized in microwaves that do not have a carousel to move the waves throughout the food.

32.     Each of the Sharp-branded Microwaves contains a defect that prevents the waves from properly moving through the waveguide into the cooking cavity. More specifically, the electromagnetic energy that originates from the magnetron tube becomes obstructed or disturbed while moving through the waveguide.  This obstruction or disturbance prevents a substantial portion of the energy from being properly guided into the cooking cavity.

33.     The obstruction or disturbance in the electromagnetic energy's movement down the waveguide causes the energy that is not transmitted to the cooking cavity to arc and otherwise concentrate near the magnetron, burning the waveguide and causing the magnetron tube to overheat.

CLASS ACTION COMPLAINT

As a result of the overheating, the magnetron tube anode terminal (the top of the magnetron tube) melts and the waveguide is scorched.

34.     Expert investigation has revealed evidence of a localized hot spot on the waveguide, which was observed several inches from the magnetron during normal operation.

35.     The hot spot is consistent with a faulty design by Sharp, in which the magnetron, the waveguide, and its load (the food) are not properly matched to one another in size and/or ratio, resulting in premature failure of the magnetron tube.

36.     Customers' experience and technicians' reports, including burn patterns in the Microwaves, are consistent with premature failure of the magnetron and an increased Voltage Standing Wave Ratio ("VSWR").

37.     Waveguide problems, such as localized energy disturbances, are consistent with an increased VSWR. The manufacturer's data sheets for magnetron tubes indicate that an increase in the VSWR reduces magnetron life.

38.     Further, the Microwaves are designed and marketed as having 950 watts cooking capacity; however, due to the obstruction or disturbance in the transmission of the energy to the cooking cavity, the Microwaves operate at a maximum of only 750 watts.

39.     While microwave drawers have only been on the market for approximately 20 years, successful alternative designs for the manufacture of microwaves that utilize magnetron/waveguide/mode stirrer technology have existed since the 1970s.

40.     The Microwaves also lack an appropriate safety mechanism to prevent the magnetron from overheating, and causing smoke, burning, and premature failure.

41.     Sharp expressly and impliedly warranted, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Microwaves are fit for the ordinary purpose for which such goods are sold.

42.     Sharp expressly warrants in its user manuals that the Microwaves are free from defects in workmanship and materials.

7

43.     Specifically, Sharp claims that the magnetron tube is warranted for a period of five years, while all other parts and labor receive a one-year warranty.

44.     The defect renders the Microwaves unfit for the ordinary purpose for which they are used.

45.     As a result of the defect, the Microwaves pose an unreasonable risk of harm to consumers and their property.

46.     Had Plaintiffs, Class Members, and the consuming public known that the Microwaves were defective, posed an unreasonable risk of harm to themselves and their property, and would cause damage, they would not have purchased the Microwaves.

47.     As a direct, proximate, and foreseeable result of the defect, Plaintiffs and Class Members suffered damages, including but not limited to: (a) the difference in value of the Microwaves as warranted and the Microwaves received; (b) loss of use of the Microwaves; (c) property damage; and (d) consequential damage.

## **PLAINTIFFS' FACTS**

Plaintiff Jill Brown

48.     In or around December 2017, Plaintiff Jill Brown purchased a Sharp-branded Microwave Oven Drawer, Model Number SMD2470AS, for her home.

49.     Shortly after her purchase, also in December 2017, the Microwave was  installed in Plaintiff's kitchen, and she began to use it  as it was intended to be used. From the time of purchase until the incident described below, Plaintiff used the Microwave as intended, cleaning it appropriately, and maintaining it in a reasonable manner as an owner of an appliance.

50.     On or about December 2018, the Microwave began to make loud crackling sounds and was smoking from both sides when it was used. Since the Microwave is installed as a drawer, Plaintiff and her family were unsure whether the cabinetry is burned or smoke damaged around the Microwave.

51.     Given the failure of the Microwave and Plaintiff's fear that the Microwave would catch

CLASS ACTION COMPLAINT

fire, potentially causing a house fire or personal injuries if used again, Plaintiff Brown and her family did not use the Microwave again.

52.     After the incident in December 2018 occurred, Plaintiff performed research online and discovered more than thirty (30) other consumers reporting the same or similar incidences.

53.     Plaintiff reported the incident to Sharp, and inquired as to the widespread nature of the problem with the Microwaves.  The Sharp representative failed to acknowledge that other consumers were reporting the same issues, and indicated that the company would look into Plaintiff's claim.

54.     Because  Sharp fraudulently concealed the defect from her before her purchase as well as after the Microwave was installed in her home and being used, Plaintiff did not suspect (and had no reason to suspect) that there was anything wrong with her Microwave until the defect manifested.

55.     On December 10, 2018,  Sharp offered Plaintiff a replacement Microwave of the same model or an "upgraded" model.  As Christmas was approaching and a working microwave was needed, Plaintiff agreed to have her failed Microwave replaced.  Sharp sent a technician to Plaintiff's home and replaced the failed Microwave with an "upgraded" model of the Microwave.  Despite Plaintiff Brown's specific request to keep the defective Microwave and her protests, Sharp confiscated the failed Microwave during the replacement. To-date, Plaintiff Brown is unable to determine the current whereabouts of her original Microwave.

56.     The replacement Microwave is a Model No. SMD2480CS. Upon information and belief, the replacement Microwave is also defective and will likely fail in the foreseeable future.

57.     Plaintiff Brown's original Microwave did not operate safely for its life expectancy. Had she known of the defect, she would have either not purchased the Microwave or would have paid less than she did. Therefore, she did not receive the benefit of her bargain.

Plaintiff Austin Russell

58.     In or around February 2016, Plaintiff Russell and his wife were renovating their kitchen, and purchased a Sharp-branded Microwave Oven Drawer, Model Number SMD2470AS.  Plaintiff paid

CLASS ACTION COMPLAINT

more than $1,000.00 for the purchase of the Microwave.

59.     Plaintiff reviewed and relied on Sharp's advertising and marketing materials regarding the Microwave when selecting and purchasing the Microwave.

60.     Plaintiff purchased the Microwave based on the belief that Sharp is a superior manufacturer, and because the design was such that would fit well with the premium kitchen renovation being completed.

61.     Plaintiff expected that the Microwave to come with a warranty that would be honored by Sharp based upon the belief that the Microwave was a high-end appliance and that Sharp was a superior manufacturer of such products.

62.     Plaintiff also believed that the Microwave would last at least ten (10) to fifteen (15) years given the cost of the Microwave.

63.     Due to the fact that the Microwave was purchased as part of a kitchen renovation, it was not installed until about 6-8 months after purchase.  After installation, the couple began to use the Microwave as it was intended to be used.  From the time of purchase until the incident described below, Plaintiff and his family members used the Microwave as intended, cleaning it appropriately, and maintaining it in a reasonable manner as an owner of an appliance.

64.     On January 13, 2019, Plaintiff was microwaving barbeque beans in a microwavable container.  Approximately 35 seconds into cooking, the Microwave began emitting a loud buzzing sound that was followed by white electrical smoke billowing from the Microwave.  Although Plaintiff Russell was able to stop the Microwave, the smoke continued to spew from the Microwave for another three (3) to five (5) minutes afterwards. Due to the installation of the Microwave as a drawer, he was unable to determine whether the cabinetry suffered fire or smoke damage.

65.     After this incident, Plaintiff Russell performed Internet research about the problems he experienced with the Microwave, and found that there were numerous other consumers reporting the same problems.  Consequently, he contacted Sharp to report the incident.  Sharp informed him that because the Microwave's one-year warranty had expired, it would only refer him to a local retailer where he could pay to have the Microwave repaired.

66.     Given the failure of the Microwave and Plaintiff's fear that the Microwave would catch fire if used again, the Plaintiff has not used and will not use the Microwave again.

67.     Because  Sharp fraudulently concealed the defect from him, Plaintiff did not suspect (and had no  reason to suspect) that there was anything wrong with his Microwave until the defect manifested in his own Microwave.

68.     Plaintiff Russell's Microwave did not operate safely for anywhere near its life expectancy. Had he known of the defect, he would have either not purchased the Microwave or would have paid less than he did. therefore, he did not receive the benefit of his bargain.

**SHARP'S ACTUAL OR
CONSTRUCTIVE KNOWLEDGE OF THE DEFECT**

69.     Sharp knew or should have known when it sold the Microwaves to the public that the Microwaves suffered from the defect, and that the defect caused the Microwaves to function improperly during their expected useful life, represented an unreasonable risk that the Microwaves would overheat, and might result in significant personal injury and/or property damage to consumers and the public.

70.     Sharp's knowledge of these facts is established through consumer complaints, including several years of public Internet posts complaining that the Microwaves failed during normal use. Despite its knowledge, Sharp did not remedy or eliminate the defect in the Microwaves or remove them from the stream of commerce.

71.     Instead, Sharp replaced the defective Microwaves with equally defective Microwaves, improperly denied warranty claims, and often tried to force consumers into signing releases and waivers of their rights if the consumer sought relief from the manufacturer.

72.     Sharp's actual knowledge of the defect is evidenced by its responses to consumer complaints submitted to https://www.saferproducts.gov, cited *infra*, wherein Sharp continues to attempt to discredit reports of the defect in the Microwaves.

73.     Sharp's response to numerous customer complaints demonstrate that not only is Sharp aware of the dangerous and potentially harmful defect, it attempts to actively conceal the dangerous defect from consumers.

74.     Customer complaints are also available online regarding the Microwaves. For example, one consumer noted:[6]

> Sharp Microwave oven model KB6524PS caused much smoke during normal use. The unit is 3 years old and I had called Sharp within 4 months of purchasing to report loud humming that would happen randomly. I was advised that this happens from time to time and that it was normal and not a warrantable condition.
>
> The noise has been becoming more frequent and recently the noise is present with smoke now that fills my kitchen. I called the help line and they said that this happens from time to time and that it is not something to worry about.

75.     Another consumer noted:[7]

> I want Sharp to acknowledge and provide support for all consumers claiming any sparks, melting or smoke with these microwaves- apparently this is frequent and needs to be addressed in order to prevent death or harm to children and adults. I would also like a full reimbursement to re-purchase a microwave that is not a fire-hazard for my family, a new replacement of the existing microwave, or a different microwave that will not pose any safety risks to my children and will fit in the kitchen cabinet built specifically for this model. Sharp needs to be held accountable and stand up for their name and products. They should not wait for a fatality or lawsuit to stop them from concealing consumers complaints of a safety hazard in their homes and knowingly misguiding consumers.

76.     Another consumer noted:[8]

> We own two Sharp Microwave Drawers - model smd2470AS. Both were manufactured in September 2015, installed in a new home in January 2016 and not used until we moved in in March 2016. Each unit is on its own independent electrical circuit, with no other appliances on either circuit.
>
> On Saturday, May 7th around noon, while cooking a sausage, one of the units (serial number 128968) had an electrical "event" - significant smoke pouring

---

[6] https://www.saferproducts.gov/ViewIncident/1664034 (last accessed Dec. 27, 2018).

[7] https://www.saferproducts.gov/ViewIncident/1581834 (last accessed Dec. 27, 2018).

[8] https://www.saferproducts.gov/ViewIncident/1571856 (last accessed Dec. 27, 2018).

out of the unit accompanied by loud cracking electrical noise. The circuit breaker did not trip. I called Sharp immediately and reported this event (Sharp case number [REDACTED]). As it was a Saturday, the[y] asked that I call back on Monday.

On Sunday, May 8th, while i was using the other unit (serial number 128862) to cook a potato, it also had an identical electrical "event" - significant smoke pouring out of the unit accompanied by loud cracking electrical noise. Again, the circuit breaker did not trip. On Monday, May 9th I called Sharp and added this information (Sharp case number [REDACTED]).

I told the Sharp personnel that had I not been in the kitchen there could have been a major, house-threatening electrical fire. I offered to have them remove the units to analyze what is happening. The Sharp "Safety Department" seems not to be interested in this.

77.     Another consumer noted on an Amazon page selling the Microwave:[9]

Why is Amazon still selling this Microwave on their website with the significant problems reported? All you need to do is look at the feedback with a rating of 1 and you can see there is a manufacturing defect. This Microwave is just 6 months installed and it melted down like Chernobyl.....sounded more like a garbage disposal then a microwave. Smoke started pouring out of the unit and got so hot I can't believe it didn't start a fire.... Very concerned based on what others have noted that replacing this unit under warranty still results in same issues and this problem has not been addressed by Sharp. I have to imag[in]e it won't be long before someone decides to start a Class Action lawsuit, or there is a major recall.

78.     Another consumer reported as follows:[10]

After one week of use we heard buzzing sound and there was lots of smoke. Took one week to get repair person here, see photos of burnt area under the chassis frame. Product has a defect that causes the painted area to burn. Repairman indicated mine was the third unit he had seen with this issue, knew right where to look. The unit is under warranty, and so I will be getting a replacement. Sharp assures me the new unit is free of any issue, which means they know of this. No other manufacturers make a drawer microwave (all use Sharp as the base model). I am stuck as the cabinet was built for this unit.

79.     In conjunction with Sharp's experience designing and selling the Microwaves, these facts and complaints illustrate that Sharp knew or should have known of the defect.

---

[9] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/dp/B00U6YFOZ6?th=1 (last accessed Dec. 27, 2018).

[10] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/product-reviews/B00U6YFOZ6/ref=cm_cr_getr_d_paging_btm_next_9?sortBy=recent&pageNumber=9 (last accessed Dec. 27, 2018).

80.     Sharp has a duty to disclose the defect and to not conceal the defect from Plaintiffs and Class Members. Sharp's failure to disclose, or active concealment of, the serious safety defect places Plaintiffs and Class members at risk of personal injury and/or property damage.

81.     Sharp is currently still selling the defective Microwaves, concealing the defect, failing to notify consumers of the safety defect, and failing to recall the Microwaves.

82.     Moreover, Sharp continues to falsely represent through written warranties that the Microwaves are free from defect, are of merchantable quality, and will perform dependably for years.

83.     When corresponding with customers, Sharp does not disclose that the Microwaves suffer from the defect. As a result, reasonable consumers, including Plaintiffs and Class members, purchased and used, and continue to purchase and use the Microwaves in their homes even though it is unsafe to do so.

84.     When Sharp replaces units, it fails to disclose known defects and it replaces the defective Microwaves with equally defective Microwaves. Some consumers, including Plaintiff Brown, have received replacement Microwaves, which have failed or will fail in the same manner.

85.     Had Plaintiffs, Class Members, and the consuming public known that the Microwaves were defective, posed an unreasonable risk of harm to themselves and their property, and would cause damage, they would not have purchased the Microwaves.

86.     Sharp has wrongfully placed on Plaintiffs and Class members the burden, expense, and difficulty involved in discovering the defect, repairing and replacing the Microwaves (potentially multiple times), and paying for the cost of damages caused by the defect.

**TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

87.     Sharp had actual awareness for years that the Microwaves  contain a defect that causes the magnetron to overheat and the unit to burn and prematurely fail.

88.     Although Sharp was aware of the dangerous defect, it took no steps to warn  Plaintiffs or the Class of such defect and the dangers the defect would pose.

89.     At least by 2015, if not earlier, Sharp had received numerous reports from consumers of incidents of loud noises, foul odors, smoke, and fire associated with the Microwaves.

90.     Sharp has purportedly changed its manufacturing process in its attempt to correct the problem for newly manufactured Sharp-branded microwave ovens, without notifying consumers of these changes.

91.     Sharp did not, however, issue a recall, warn consumers, or take any other affirmative steps to correct the problem in the Microwaves already in the field with the defective magnetron, neither did Sharp take steps to alert members of the Class about the problem.

92.     Despite its knowledge, Sharp concealed the fact that the Microwaves were defective, even though it had a duty to disclose the defect.

93.     Sharp made affirmative misrepresentations to consumers during the sale of the Microwaves, including that the Microwaves were free of defects and that the Microwaves would be repaired or replaced within the first five (5) years after purchase if the magnetron tube failed to operate.

94.     In fact, Sharp's Warranty provides:
One (1) year parts and labor including in-home service. The warranty period continues for an additional four (4) years, for a total of five (5) years, with respect to the magnetron tube in the Product for parts only; labor and service are not provided free of charge for this additional period.

95.     Sharp made affirmative misrepresentations to Plaintiffs and consumers during warranty claims and other correspondence with consumers lodging complaints, including that, their Microwave failures were anomalous; problems with the Microwaves have been resolved in an effort to persuade consumers to accept replacement Microwaves; that Microwaves more than one (1) year old were out of warranty; and in other ways to be discovered.

96.     At all times, Sharp concealed that the Microwaves and any replacements were defective.

97.     Sharp's concealment was material to Plaintiffs and Class Members' decision to purchase the Microwaves. Sharp's concealment was knowing, and Sharp intended to mislead Plaintiffs and Class Members into relying upon it. Accordingly, Plaintiffs and Class Members relied upon Sharp's concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

98.     The defect in the design and/or manufacture of the Microwaves was not detectible  to Plaintiffs and members of the Class.

99.     Sharp actively and intentionally concealed the existence of the defect and failed to inform Plaintiffs or Class Members of the existence of the defect at all times, including when they contacted Sharp about the problems.  Accordingly, Plaintiffs and Class Members' lack of awareness was not attributable to lack of diligence on their part.

100.     Sharp's statements, words, and acts were made for the purpose of suppressing the truth that the Microwaves and replacements were defective.

101.     Sharp concealed the defect for the purpose of delaying Plaintiffs and Class Members from filing a complaint on their causes of action.

102.     As a result of Sharp's active concealment of the defect and/or failure to inform Plaintiffs and members of the Class of the defect, any and all applicable statutes  of limitations otherwise applicable to the allegations herein have been tolled.  Furthermore, Sharp is estopped from relying on any statutes of limitations in light of its active concealment of the  defective nature of the Microwaves.

## CLASS ACTION ALLEGATIONS

103.     Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Class:

> All persons residing in the State of California who purchased a  Sharp Microwave Drawer, model numbers  SMD2470AH, SMD2470AS, SMD3070AS, SMD2480CS, KB6524PS, and KB6525PS.

104.     Plaintiffs reserve the right to modify the class definition if necessary to include additional Sharp Microwave Drawer models with the same defect and/or other Microwave Drawers manufactured by Sharp with the common defect but bearing different brand names.

105.     Numerosity: The members of each Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, it consists of

1   thousands of people geographically disbursed throughout California. The number of Class members
2   can be determined by sales information and other records. Moreover, joinder of all potential Class
3   members is not practicable given their numbers and geographic diversity. The Class is readily
4   identifiable from information and records in the possession of Sharp and its third-party distributors.

5       106.    Commonality: Common questions of law and fact exist as to all members of each Class.
6   These questions predominate over questions that may affect only individual Class Members because
7   Sharp has acted on grounds generally applicable to the Class.  Such common legal or factual questions
8   include, *inter alia*:
9

10      (a)    Whether the Microwaves are defective;

11      (b)    Whether the Microwaves are defectively designed and/or manufactured;

12      (c)    Whether Sharp knew or reasonably should have known about the defect prior to
               distributing the Microwaves to Plaintiffs and the Class;

13
14      (d)    Whether Sharp concealed from and/or failed to disclose to Plaintiffs and the Class
               the problems with the Microwaves;

15      (e)    Whether Sharp knew or reasonably should have known about the defect after
               distributing the Microwaves to Plaintiffs and the Class;
16
17      (f)    Whether Sharp breached the implied warranty of merchantability and the Song-
               Beverly Consumer Warranty Act, relating to the Microwaves;

18      (g)    Whether Sharp breached express warranties relating to the Microwaves;

19      (h)    Whether Sharp was unjustly enriched by receiving moneys in exchange for
               Microwaves that were defective;
20
21      (i)    Whether Sharp should be ordered to disgorge all or part of the ill-gotten profits it
               received from the sale of the defective Microwaves;

22      (j)    Whether Plaintiffs and the Class are entitled to damages, including compensatory,
               exemplary, and statutory damages, and the amount of such damages;
23
24      (k)    Whether Sharp should be enjoined from selling and marketing its defective
               Microwaves;

25      (l)    Whether Sharp engaged in unfair, unconscionable, or deceptive trade practices by
               selling and/or marketing defective Microwaves; and
26
        (m)    Whether Sharp negligently designed or manufactured the defective Microwaves.
27
        107.   Typicality:  Plaintiffs' claims are typical of the members of the Class as all  members of
28

17

the Class are similarly affected by the same defect and Sharp's actionable conduct. Plaintiffs and all members of the Class purchased the Microwaves with a defect that makes the Microwaves inherently dangerous. In addition, Sharp's conduct that gave rise to the claims of Plaintiffs and members of the Class (*i.e.* delivering a defective microwave drawer, concealing the defect, and breaching warranties respecting the microwave drawer) is the same for all members of the Class.

108.    <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately protect the interests of the Class because they have no interests antagonistic to, or in conflict with, the Class that Plaintiffs seeks to represent. Furthermore, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation.

109.    <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Sharp has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

110.    <u>Predominance</u>: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly-situated Plaintiffs.

111.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

112.    Sharp has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class

as a whole.

**FIRST CLAIM FOR RELIEF**
**Strict Products Liability – Defective Design & Manufacture**
**(Plaintiffs Individually and on Behalf of All Others Similarly Situated)**

113.    Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully set forth herein.

114.    The Microwaves were designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Sharp.

115.    When it left the control of Sharp, the Microwaves were expected to and did reach Plaintiffs and Class Members without substantial change from the condition in which it left Sharp's control.

116.    The Microwaves were defective when they left Sharp's control and were placed in the stream of commerce, in that there were foreseeable defects in the design and/or manufacture of the product.

117.    The Microwaves were in an unreasonably dangerous condition at the time they left Sharp's control and were placed in the stream of commerce, and at the time they were purchased by Plaintiffs and Class Members.

118.    The Microwaves were unfit for their intended use, and in a defective condition which caused the product to buzz, smoke, and scorch the back panel of the Microwaves, causing damages to the Microwaves and other property in Plaintiffs' homes, including smoke damage to cabinetry, kitchen islands, and other portions of the kitchen, as well as damage to the food intended to have been cooked.

119.    Plaintiffs and the Class Members used the Microwaves in substantially the same condition they were in when they left the control of Sharp, and in the manner intended.

120.    Had Sharp altered its design and manufacturing process utilizing viable alternatives, the Microwaves would not buzz, smoke, catch fire, and cause damage to the Microwaves and smoke damage to Plaintiffs' and Class Members' homes.

19

121.    Better and safer methods of design and manufacturing of microwave oven drawers were available and utilized by other manufacturers in the same industry.

122.    As a direct and proximate result of Sharp's defective design and/or manufacture of the Microwaves, Plaintiffs and Class Members suffered damages and economic loss as set forth herein.

123.    Sharp is strictly liable to Plaintiffs and Class Members for all damages and economic losses resulting from its defective design and/or manufacture of the Microwaves.

124.    As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### SECOND CLAIM FOR RELIEF
**Breach of Implied Warranties and**
**Song-Beverly Consumer Warranty Act California Civil Code § 1790, *et seq.***
**(Plaintiffs Individually and on Behalf of All Others Similarly Situated)**

125.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceeding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

126.    Plaintiffs bring this cause of action individually and on behalf of the Class.

127.    Sharp was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Microwaves.  Sharp knew or had reason to know of the specific use for which the Microwaves were purchased.

128.    Sharp provided Plaintiffs and Class Members with implied warranties that the Microwaves were merchantable and fit for the ordinary purposes for which they were sold.

129.    However, the Microwaves are not fit for their ordinary purpose of providing reasonably reliable and safe heating of food because, *inter alia*, the Microwaves contained a defect preventing the Microwaves from safely heating food without electrical arcing, smoking, melting the magnetron tube and potentially catching fire, as well as preventing the Microwaves from cooking food at the represented wattage.  Therefore, the Microwaves are not fit for their particular purpose of providing safe and reliable transportation.

130.    The problems associated with the defect such as electrical arcing, smoking, melting the magnetron tube and potentially catching fire are safety risks such that the Microwaves do not provide safe reliable cooking appliances, and therefore, there is a   breach of the implied warranty of merchantability. These problems are exacerbated by Sharp's failure to design and/or implement a safety function that will shut the Microwaves off in the event of arcing.

131.    Sharp impliedly warranted that the Microwaves were of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that the Microwaves were manufactured, supplied, distributed, and/or sold by Sharp were safe and reliable for heating food; and (ii) a warranty that the Microwaves would be fit for their intended use while the Class Vehicles were being operated.

132.    Contrary to the applicable implied warranties, the Microwaves, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe methods of heating food.  Instead, the Microwaves suffer from a defective design and/or manufacture, as alleged herein.

133.    Sharp's actions, as complained of herein, breached the implied warranties that the Microwaves were of merchantable quality and fit for such use in violation of Cal. Civ. Code §§ 1791.1 and 1792.

### THIRD CLAIM FOR RELIEF
**Breach of Express Warranty Statute,**
**Cal. Com. Code §§ 2313, et seq.**
**(Plaintiffs Individually and on Behalf of All Others Similarly Situated)**

134.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

135.    In connection with its sale of the Microwaves, Sharp expressly warranted that they were free from defects and suitable for microwaving food.

136.    The Consumer Limited Warranty states that in accordance with such warranty, Sharp, "agrees that it will, at its option, either repair the defect or replace the defective Product or part thereof

21

with a new or remanufactured equivalent at no charge to the purchaser for parts or labor for the period(s) set forth below."

137.    Further, the Warranty Period for the Microwaves is: "One (1) year parts and labor including in-home service. The warranty period continues for an additional four (4) years, for a total of five (5) years, with respect to the magnetron tube in the Product for parts only; labor and service are not provided free of charge for this additional period."

138.    The defectively designed Microwaves are subject to and otherwise covered by Sharp's Consumer Limited Warranty.

139.    Each of the Microwave models has an identical or substantially identical warranty.

140.    Plaintiffs and the Class Members have privity of contract with Sharp through their purchase of the Microwaves, and through the express written and implied warranties that Sharp issued to its customers. Sharp's warranties accompanied the Microwaves and were intended to benefit end-users of the Microwaves. To the extent Class Members purchased the Microwaves from third-party retailers or via the purchase of their homes, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Sharp and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are intended to benefit the ultimate consumer or user of the Microwaves.

141.    The express written warranties covering the Microwaves were a material part of the bargain between Sharp and consumers. At the time it made these express warranties, Sharp knew of the purpose for which Microwaves were to be used.

142.    Sharp breached its express warranties by selling Microwaves that were, in actuality, not free of defects, not made for years of dependable use, not made from merchantable material and workmanship, were unsafe for use, and could not be used for the ordinary purpose of heating food. Sharp breached its express written warranties to Plaintiffs and Class Members in that the Microwaves are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a serious safety risk to Plaintiffs and Class Members.

143.   Microwaves that the Plaintiffs and Class Members purchased contained a defect that caused each of them damages including loss of the product, loss of the benefit of their bargain, and property damage.

144.   Plaintiffs and Class Members notified Sharp of its breach of the express warranty shortly after their Microwaves failed to perform as warranted due to the defect.

145.   Moreover, Sharp was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

146.   Sharp breached its express warranty to adequately repair or replace the Microwave despite its knowledge of the defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Microwaves.

147.   To the extent that Sharp offered to replace the defective Products, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiff Brown and Class Members whole because the warranty covering the Microwaves gives Sharp the option to repair or replace the Microwave, where neither is sufficient. Specifically, Sharp often opts to provide a replacement Microwave; however, the replacement Microwave likewise contains the defect, resulting in the same safety risks to the owners, and the same or similar damages occur to the replacement and the owner's personal property.

148.   Further, the repair or replacement under the Consumer Limited Warranty does not apply to all Microwaves—it necessarily only applies to the Microwaves that have manifested the latent defect and have already failed. The warranty of repair or replacement of failed Microwaves is insufficient to adequately cover all defective Microwaves, or cannot do so within the time period under either the one-year or five-year warranty periods, or within the reasonable expected service life of a Microwave at ten (10) years.

149.   Many of the damages resulting from the defective Microwaves cannot be resolved through the limited remedy of replacement, as incidental and consequential damages have already been suffered due to Sharp's conduct as alleged herein.

CLASS ACTION COMPLAINT

150.     Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

151.     Upon information and belief, Sharp received further notice and has been on notice of the defective nature of the Microwaves and of its breaches of warranties through customer warranty claims reporting problems with Sharp, consumer complaints at various sources, and its own internal and external testing. Sharp also received such notice through Plaintiffs who complained to Sharp about the defective Microwave and resulting damage.

152.     Despite having notice and knowledge of the defective nature of the Microwaves, Sharp failed to provide any relief to Plaintiff Russell and Class Members with Microwaves more than one (1) year old, failed to provide a non-defective replacement Microwave to Plaintiff Brown and Class Members, and otherwise failed to offer any appropriate compensation from the resulting damages.

153.     Had Plaintiffs, Class Members, and the consuming public known that the Microwaves were defective, posed an unreasonable risk of harm to themselves and their property, would cause damage, or that Sharp would not properly honor its warranty, they would not have purchased the Microwaves.

154.     As a direct and proximate result of Sharp's breach of its express written warranties, Plaintiffs and Class members did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of the defective Microwaves, in addition to loss of the product and its intended benefits.

**FOURTH CLAIM FOR RELIEF**
**(IN THE ALTERNATIVE)**
**Unjust Enrichment**
**(Plaintiffs Individually and Behalf of All Others Similarly Situated)**

155.     Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

156.     This alternative claim is asserted on behalf of Plaintiffs and Class Members to the extent there is any determination that any contracts between Class Members and Sharp do not govern the subject matter of the disputes with Sharp, or that Plaintiffs do not have standing to assert any contractual claims against Sharp.

CLASS ACTION COMPLAINT

157.     Plaintiffs and Class Members conferred a monetary benefit on Sharp, and Sharp had knowledge of this benefit. The average price paid by Plaintiffs and Class Members for the Microwaves was more than $1,000.00.

158.     By its wrongful acts and omissions described herein, including selling the defective Microwaves, Sharp was unjustly enriched at the expense of Plaintiffs and Class Members.

159.     Plaintiffs and Class Members' detriment and Sharp's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

160.     It would be inequitable for Sharp to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Microwaves.

161.     Plaintiffs and Class Members seek restitution from Sharp and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sharp from their wrongful conduct and establishing a constructive trust from which Plaintiffs and Class Members may seek restitution.

**FIFTH CLAIM OF ACTION**
**Violation Of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, *et seq.***
**(Plaintiffs Individually and Behalf of All Others Similarly Situated)**

162.     Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

163.     The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

164.     California Business and Professions Code § 17500 prohibits deceptive or misleading practices in connection with advertising or representations made for the purpose of inducing, or which are likely to induce, consumers to purchase product.

165.     Sharp, when it marketed, advertised and sold the Microwaves, represented to Plaintiffs and Class Members that the Microwaves were free of defects, despite the fact that the Microwaves were defective and prone to failure.

166.    At the time of its misrepresentations, Sharp was either aware that the Microwaves were defective or was aware that it lacked the information and/or knowledge required to make such a representation truthfully. Sharp concealed, omitted and failed to disclose this information to Plaintiffs and Class Members.

167.    Sharp's descriptions of the Microwaves were false, misleading, and likely to deceive Plaintiffs and other reasonable consumers.

168.    Sharp's conduct therefore constitutes deceptive or misleading advertising.

169.    Plaintiffs have standing to pursue claims under the FAL as they reviewed and relied on Sharp's advertising and marketing materials regarding the Microwaves, when selecting and purchasing the Microwaves.

170.    In reliance on the statements made in Sharp's advertising and marketing materials and Sharp's omissions and concealment of material facts regarding the quality of the Microwaves, Plaintiffs and Class Members purchased the Microwaves.

171.    Had Sharp disclosed the true defective nature of the Microwaves, Plaintiffs and Class Members would not have purchased the Microwaves or would have paid substantially less for them.

172.    As a direct and proximate result of Defendant's violations of the California Business and Professions Code as set forth above, Plaintiffs and Class Members seek restitution of any monies wrongfully acquired or retained by Defendant and by means of its deceptive or misleading representations, including monies already obtained from Plaintiffs and Class Members, under § 17500.

**SIXTH CLAIM OF ACTION**
**Violation Of the California Consumer Legal Remedies Act**
**Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.***
**(Plaintiffs Individually and Behalf of All Others Similarly Situated)**

173.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

174.    The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*

26

175.   The CLRA applies to all claims of all Class Members because the conduct which constitutes violations of the CLRA by Defendant occurred within the State of California.

176.   Plaintiffs and Class Members are "consumers" as defined by Civil Code § 1761(d).

177.   Sharp is a "person" as defined by Civil Code § 1761(c).

178.   The Microwaves qualify as "goods" as defined by Civil Code § 1761(a).

179.   Plaintiffs and the Class Members' purchases of the Microwaves are "transactions" as defined by Civil Code 25 § 1761(e).

180.   As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer as unlawful.

      (a)   "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Civil Code § 1770(a)(5); and

      (b)   "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7).

181.   Sharp engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5) and (a)(7) when it represented, through its advertising and other express representations, that the Microwaves had benefits or characteristics that they did not actually have.

182.   As detailed in the body of this Complaint, Sharp has repeatedly engaged in conduct deemed a violation of the CLRA, and has made representations regarding the defective Microwaves did not in fact have, and represented the Microwaves of a quality that was not true. Indeed, Sharp concealed this information from Plaintiffs and Class Members.

183.   The Microwaves were not and are not "reliable," in that the products have a higher failure rate, and fail faster than other products in the industry. As detailed above, Defendant further violated the CLRA when it falsely represented that the Microwaves have a certain standard or quality.

184.   As detailed above, Sharp violated the CLRA when it advertised the Microwaves with the intent not to sell them as advertised and knew that the Microwaves were not as represented.

185.    Defendant's deceptive practices were specifically designed to induce Plaintiffs and Class Members to purchase or otherwise acquire the Microwaves.

186.    Sharp engaged in uniform marketing efforts to reach Class Members, their agents, and/or third parties upon whom they relied, to persuade them to purchase and install the Microwaves manufactured by Sharp. Sharp's website and brochures contained the numerous false and misleading statements regarding the quality, durability, and reliability of the Microwaves.  These include, *inter alia*, the following: misrepresentations:

"SHARP ELECTRONICS CORPORATION warrants to the first consumer purchaser that this Sharp brand product (the "Product"), when shipped in its original container, will be free from defective workmanship and materials"

The Warranty includes "One (1) year parts and labor including in-home service. The warranty period continues for an additional four (4) years, for a total of five (5) years, with respect to the magnetron tube in the Product for parts only; labor and service are not provided free of charge for this additional period."

 "Cooking Performance You Can Trust"

"COOKING PERFORMANCE FROM ONE OF THE MOST TRUSTED BRANDS IN MICROWAVES"

"Sharp has been innovating microwave cooking for decades and holds eleven patents on the Microwave Drawer alone.  You can trust that the Microwave Drawer will deliver the performance you need because it is engineered for great cooking results and is built with the finest quality materials."

The Microwaves heat food at "950 watts."

"Sharp has been innovating microwave cooking for decades and holds 11 patents on the Microwave Drawer platform alone. Engineered for consistency and built with the finest quality materials, great cooks trust the Microwave Drawer to deliver great results every time."

"The Sharp Microwave Drawer Oven has been designed to complement the widest range of kitchen styles and appliances.  The sleek low profile design and a stainless steel finish beautifully compliment any kitchen."

187.    Sharp also omitted and concealed this information and material facts from Plaintiffs and Class Members.

188.     In their purchase of the Microwaves, Plaintiffs and Class Members relied on Sharp's representations and omissions of material facts.

189.     These business practices are misleading and/or likely to mislead consumers and should be enjoined.

190.     On or about January 22, 2019, Plaintiffs provided written notice to Sharp via Certified Mail, Return Receipt Requested, of its violations of the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770, *et seq.* Plaintiffs will seek to amend this claim after Sharp responds to their requests as stated in the CLRA notice letter.

191.     Plaintiffs' declarations stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) are attached hereto as Exhibits A and B.

192.     In accordance with Civil Code § 1780(a), Plaintiffs and the other Class Members seek injunctive and equitable relief for Sharp's violations of the CLRA, including an injunction to enjoin Sharp from continuing its deceptive advertising and sales practices.

## SEVENTH CLAIM OF ACTION
### Negligence
### (Plaintiffs Individually and Behalf of All Others Similarly Situated)

193.     Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs into this cause of action and claim for relief as if fully set forth herein.

194.     At all times material hereto, Sharp designed and manufactured the Microwaves.

195.     Sharp had a duty to Plaintiffs and to Class Members to design and manufacture Microwaves that were free of latent defects, which would not overheat the magnetron, scorch the back of the unit, cause damage to the food being cooked, cause smoke damage to other parts of the home, including kitchen islands and cabinetry, and that presents serious safety risks as a result of a malfunctioning electrical appliance.

196.     Sharp had a duty to design and manufacture the Microwaves such that there was a mechanism to prevent arcing, or otherwise prevent the Microwave from further functioning and overheating the magnetron once arcing occurred.

CLASS ACTION COMPLAINT

197.    Sharp had a duty to Plaintiffs and to Class Members to test the Microwaves to ensure adequate performance of the Microwaves for a reasonable period of use, and to ensure they would not be subject to premature failure, or would cause damage to food or smoke damage to the home.

198.    Sharp had a duty to Plaintiffs and to Class Members to ensure that the magnetron tube, waveguide, and other components were suitable, either by testing or by verifying third-party test results.

199.    Sharp had a duty to Plaintiffs and to Class Members to ensure that the Microwaves complied with industry standards, testing, and safety guidelines.

200.    Sharp had a duty to Plaintiffs and Class Members to forewarn purchasers, installers, and users regarding the known risk of product failures.

201.    Sharp failed to exercise ordinary and reasonable care in the design and manufacture of the Microwaves and in determining whether the Microwaves that it sold, and continued to sell, contained a latent defect that would result in the failure of the Microwaves to perform as reasonably expected.

202.    Sharp failed to exercise ordinary and reasonable care in the design and manufacture of the Microwaves and breached the foregoing duties.

203.    Sharp breached its duty to the Plaintiffs and Class Members to test the Microwaves to ensure adequate performance of the Microwaves for a reasonable period of use.

204.    Sharp breached its duty to Plaintiffs and to Class Members to ensure that the Microwave components were suitable, either by testing or by verifying third-party test results.

205.    Sharp breached its duty to Plaintiffs and to Class Members to ensure that the Microwaves complied with industry standards, safety guidelines, and testing standards.

206.    Sharp breached its duty to Plaintiffs and to Class Members to forewarn purchasers, installers, and users regarding the known risk of product failures.

207.    The negligence of Sharp, its agents, servants, and/or employees, include the foregoing, as well as the following acts and/or omissions:

        (a)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Microwaves without adequately and

thoroughly testing them to all applicable standards and safety guidelines;

(b)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Microwaves without adequately testing long term performance;

(c)    negligently failing to ensure that the Microwaves conformed to all applicable industry standards, safety guidelines, and testing standards; and

(d)    concealing information concerning the defect inherent in the Microwaves from Plaintiffs and the Class Members, while knowing that Sharp's Microwaves were defective and non-conforming with accepted industry standards and safety guidelines.

208.    Plaintiffs and the Class Members have been damaged because the defective Microwaves do not perform the ordinary purpose of heating food safely.

209.    Plaintiffs and Class Members have also been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wanton behavior of Sharp as aforesaid, including, but not limited to, damage to the Product, loss of the food being cooked, smoke damage to kitchen islands and cabinetry, and related safety risks.

210.    As Sharp's conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent, or the like, Plaintiffs and Class Members are entitled to an award of punitive damages against Sharp.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.   Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.   Name Plaintiffs as Class Representatives and their counsel as Class Counsel;

C.   Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial;

D.   Grant restitution to Plaintiffs and the Class and require Sharp to disgorge its ill-gotten gains;

E.   Permanently enjoin Sharp Electronics Corporation from engaging in the wrongful and unlawful conduct alleged herein;

F.   Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys'

31

fees to the extent provided by law;

G.  Award Plaintiffs and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.  Award such further relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury.

DATED:  January 22, 2019

Respectfully submitted,
**TYCKO & ZAVAREEI LLP**

/s/ Hassan A. Zavareei
Hassan A. Zavareei (SBN 181547)
Andrea Gold*
**TYCKO & ZAVAREEI LLP**
1828 L. Street, NW, Suite 1000
Washington, D.C 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com

Annick Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway – Suite 1070
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

Gregory F. Coleman*
Rachel Soffin*
Lisa A. White*
Adam A. Edwards*
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com
lisa@gregcolemanlaw.com
adam@gregcolemanlaw.com

Daniel K. Bryson*
Harper T. Segui*
**WHITFIELD BRYSON & MASON, LLP**

32

CLASS ACTION COMPLAINT

900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
dan@wbmllp.com
harper@wbmllp.com

*Will seek admission *pro hac vice*

CLASS ACTION COMPLAINT